UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
JASON P. GREEN,
                      Plaintiff,

        -against-

NEW YORK CITY FIRE DEPARTMENT,

                      Defendant.
---------------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

08 Civ. 0491 (BMC)

**COGAN**, District Judge.

This is a "regarded as" disability case under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213, in which plaintiff alleges that he was denied appointment as a New York City firefighter based on the misperception of the New York City Fire Department ("FDNY") that he was unable to do the job on account of an ankle injury. It is before me on defendant's motion for summary judgment. I hold that plaintiff has failed to make out a prima facie case that the FDNY regards him as disabled as defined in the ADA, and I therefore grant the motion.

## BACKGROUND

The material facts are undisputed. In November of 2003, plaintiff commenced working as an Emergency Medical Technician ("EMT") at the FDNY. Almost one year later to the day, in November, 2004, he was in an automobile accident and sustained serious injuries to his left ankle and pelvis resulting in immediate surgery. He had more surgery in February, 2005. He stayed out on medical leave until May, 2005, when he returned to the same job as an EMT but on light duty, and reassumed full duty as an EMT in November, 2005.

Shortly after his second surgery, in March, 2005, plaintiff took the written examination to become a firefighter at the FDNY and did quite well. After he and the FDNY agreed, after some litigation, to postpone the physical component of the test until his ankle was more fully healed, he took that component in October, 2006 and passed it.

He did not, however, pass his medical examination the following January. He was found by an FDNY Health Services doctor to have "limited motion" and "post-traumatic arthritis" in his ankle. Based on those and other more specific findings, the doctor rated plaintiff as "not qualified." The doctor, however, referred plaintiff to an orthopedic specialist at the FDNY for further evaluation. The orthopedist also found him "not qualified" based on similar medical findings, but again referred plaintiff to the full FDNY Board of the Health Services division for final evaluation. The Board, after further examination and review, concurred that plaintiff was unfit for firefighting based on a significant loss of function, range of motion, and post-traumatic arthritis in his ankle.

The bone of contention between the parties is plaintiff's ability to squat and to "duck walk," which is moving forward while in a squatting position.[1] The FDNY asserts that these actions are essential to fighting fires in New York City, and plaintiff's ability to do them is too severely compromised to permit him to perform this essential function. The FDNY points out that in burning buildings, the air temperature nearer to the ground can be significantly lower, and that the ability to move quickly while squatting instead of standing can mean the difference between survival and death. The FDNY also asserts that it teaches these skills as part of its training and probationary period and that the skills are required to advance a hoseline. It further asserts that in buildings with concrete floors, crawling is an inadequate substitute, because one

---

[1] See eHow Sports and Fitness Ed., How to Duck Walk, at http://www.ehow.com/how_2089987_.html

byproduct of firefighting is the formation of scalding pools of water which would burn the knees during crawling. Duck walking also prevents injury from rubble or debris that would be encountered during crawling.

Plaintiff responds that squatting and duck walking are not at all essential to firefighting and that in any event, he has the ability to do them as well as is necessary to be a successful and safe firefighter. He supports his position by referring to a medical opinion from his treating orthopedic surgeon, who opines that he can perform all the duties of a firefighter. Plaintiff also has submitted affidavits from several present firefighters. They note that firefighters have a broad range of distinguishable assignments and they offer their opinion based on their own experience that many of these assignments do not require squatting or duck walking.

Having obtained his right-to-sue letter from the EEOC, plaintiff commenced this action. He continues to work for the FDNY as an EMT.

## DISCUSSION

### I. Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. See Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d Cir. 1994). No genuine factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. See Chertkova v. Conn. Gen.'l Life Ins. Co., 92 F.3d 81, 86 (2d Cir. 1996). To defeat a

summary judgment motion, the non movant must offer evidence setting forth specific facts that show that there is a genuine issue of material fact to be tried. See Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). That opposing evidence must present more than "some metaphysical doubt as to the material facts." Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348 (1986)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254-55, 106 S.Ct. 2505 (1986). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. See Brady v. Town of Colchester, 863 F.2d 205, 210-11 (2d Cir. 1988). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" Id. at 211 (citing Matsushita, 475 U.S. at 587, 106 S.Ct. 1348).

## II. Disability Under the ADA

Like other employment discrimination claims, ADA claims are evaluated under the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817 (1973). McDonnell Douglas established a three step process: (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; and (3) the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual or that

4

illegal discrimination was an actual reason for the adverse employment action. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097 (2000). Only the first step – the establishment of a prima facie case – is at issue on the instant motion.

In order to make out a prima facie case of an ADA violation, the plaintiff must show that: (1) his employer is subject to the ADA; (2) he is disabled under the ADA; (3) he is otherwise qualified to perform the essential functions of the job with or without a reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001). Again, the inquiry is further narrowed on the instant motion; only the second and third requirements are at issue.

*A. Disability*

The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities...; (B) a record of having such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). An individual is thus disabled within the meaning of the ADA if he "(1) suffers from a physical or mental impairment, that (2) affects a major life activity, and (3) the effect is 'substantial.'" Regional Economic Community Action Program, Inc. v. City of Middletown, 281 F.3d 333, 344 (2d Cir. 2002). Once again, the issue in this case is narrow; the only question is whether plaintiff falls under (C), i.e., does the FDNY regard him as disabled?

In this connection, "[i]t is not enough that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled *within the meaning of the ADA*." Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir. 1998) (emphasis in original). There are two ways an employee can be regarded as disabled under the ADA: "(1) a covered entity mistakenly believes that a person has a physical

5

impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139 (1999).

Although the ADA does not define "major life activities" or what constitutes a "substantial limitation," the regulations promulgated by the EEOC under the ADA provide some guidance. See, e.g., Francis v. City of Meriden, 129 F.3d 281, 283 n.1 (2d Cir. 1997) (courts should afford deference to EEOC regulations interpreting the ADA). The EEOC regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). In addition to these examples, courts also have recognized other similar activities, including sitting, standing, and lifting, as major life activities. See, e.g., Ryan, 135 F.3d at 870 (citing U.S. Equal Employment Opportunity Commission, Americans with Disabilities Act Handbook I-27 (1992)).

Plaintiff asserts that the FDNY mistakenly regards him as substantially limited in two major life activities.

**1. Squatting**

Plaintiff first contends that squatting is a major life activity, and the FDNY's misperception that he cannot do it violates the ADA. Plaintiff's creative argument is that because the EEOC recognizes standing and sitting as major life activities, then squatting must be one too, because one must squat in order to sit. Plaintiff asserts that it would make no sense to consider standing and sitting as major life activities without considering the ability to change between the two as a major life activity as well.

Plaintiff's analogy, however, leads to the opposite conclusion. It illustrates that we must take care not to confuse the label of the activity with the activity itself. Although it is true that the perceived inability to move from a standing to a sitting position would constitute a compromised major life activity, the squatting and duck walking required by the FDNY does not refer to being able to sit down in a chair (although it would probably include that). Rather, the FDNY is requiring an ability to get down very low (plaintiff's own submissions define it as "bending of the knees so that the buttocks rest on or near the heels") and move quickly in that position, often while bearing a heavy load, in high-stress or even dangerous situations. We can call that "squatting," but it is emphatically different than "sitting down."

The term "major life activity" refers to routine actions that people of ordinary capabilities regularly undertake. This is clear from the illustrations provided in the regulations and case law – e.g., walking, hearing, seeing, speaking, sitting, standing and lifting. The ordinariness of these activities stands in marked contrast to the peculiar action the FDNY believes, rightly or wrongly, that plaintiff is unable to perform. It is true that someone who could only bend a few degrees at the waist and knees might be unable to perform a major life activity. That, however, is not the disability that the FDNY ascribes to plaintiff. The physical ability at issue here is a specialized one, not one that can be perceived as a major life activity. Cf. Conant v. City of Hibbing, 131 F. Supp. 2d 1129, 1135 (D. Minn. 2000) ("while we have no doubt that a serious back injury can severely cripple the ability of an individual to obtain employment of any kind, that is not the evidence that [plaintiff] has proffered here. Rather, [plaintiff] has been encumbered by a 30-pound lifting restriction, and a limitation on repeated acts of squatting and bending ... [which is] not sufficient to demonstrate that plaintiff was unable to perform a class of jobs.").

7

Even if I analyzed the activity at issue as broadly as plaintiff – including, effectively, any bending or sitting motion – and thus concluded it was a major life activity, plaintiff's claim would fail for the same reason. Under the applicable regulations, the FDNY would have to view plaintiff's condition as "substantially limiting." "Substantially limiting" is defined as

> (i) Unable to perform a major life activity that the average person in the general population can perform, or
>
> (ii) Significantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). Again, the specialized nature of the dynamic activity that the FDNY requires disqualifies it from this definition. There is no evidence before me that the FDNY believes, for example, that plaintiff cannot bend or stoop as well as the average person. There is no "significant restriction" on his ability to do those activities. The restriction that the FDNY perceives is as to a specialized activity required for its peculiar tasks. Plaintiff's perceived inability to do it does not "substantially limit" his major life activities.[2]

---

[2] Plaintiff relies on Prince v.Claussen, 173 F.3d 864, 1999 WL 152282 (10th Cir. 1999) (table), as holding that squatting constitutes a major life activity. The brief reference to squatting is combined with numerous other limitations and is in any event dictum. (Curiously, the FDNY protests plaintiff's citation of the case under Second Circuit Local Rule 32.1(c)(2). Of course, Tenth Circuit rules, not Second Circuit rules, define the precedential effect of Tenth Circuit decisions. Tenth Circuit Rule 32.1 simply provides that unpublished decisions do not constitute binding precedent, and since the Eastern District of New York is not within the Tenth Circuit, the decision is not precedential in any event.)

Plaintiff also relies on an executive summary of a conference entitled "Stooped and Squatting Procedures in the Workplace," at www.cdc.gov/eLCOSH/docs/d0800/d000811/d000811.html, which conference apparently addressed the effect of those postures on back injuries in the workplace, to show that squatting is a major life activity. Although the summary states that "[s]peakers at this conference made clear that the problem of stooped and squatting postures in the workplace is global in scope and widespread in many industries," the "problem" referred to is back injuries when those postures are used. The summary is much too general and inapposite to support an argument that squatting is a major life activity. Moreover, plaintiff, in relying on the summary, conflates "stooping," which means bending forward at the waist, with "squatting," which the summary makes clear are two different actions. There is no claim in this case that the FDNY has any issue with plaintiff's ability to stoop.

## 2. Working

Plaintiff next argues that the FDNY perceives him as substantially limited in the major life activity of "working." EEOC regulations include working amongst major life activities. 29 C.F.R. § 1630.2(i); Bartlett v. New York State Bd. of Law Examiners, 226 F.3d 69, 80 (2d Cir. 2000). Where the major life activity at issue is working, EEOC regulations further define "substantially limits" as

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). In determining whether an individual is substantially limited in the major life activity of working, courts should consider:

> (A) The geographical area to which the individual has reasonable access;
>
> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>
> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

Consistent with the regulations, the Supreme Court has held that "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139 (1999). Thus,

> [t]o be substantially limited in the major life activity of working, ... one must be precluded from more than one type of job, a specialized job, or a particular job of

> choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

Id. at 492, 119 S.Ct. 2139; see Colwell, 158 F.3d at 647 ("To prove that they were regarded as substantially limited in their ability to work, the officers bore the burden of proving that the County 'perceived [them] to be incapable of working in a broad range of jobs' suitable for persons of their age, experience, and training." (quoting Ryan v. Grae & Rybicki, 135 F.3d 867, 872 (2d Cir. 1998))).

Nevertheless, it should be noted that the Supreme Court is not enamored with the EEOC's decision to include "working" within the definition of major life activities. The Court has only considered "working" as a major life activity in cases where the plaintiff could not meet that standard; it thus has never served as the basis for relief from the Supreme Court. More importantly, although the Court has analyzed working as a major life activity where the parties accepted that it should be so analyzed, the Court has commented that

> there may be some conceptual difficulty in defining "major life activities" to include work, for it seems "to argue in a circle to say that if one is excluded, for instance, by reason of [an impairment, from working with others] ... then that exclusion constitutes an impairment, when the question you're asking is, whether the exclusion itself is by reason of handicap."

Sutton, 527 U.S. at 492, 119 S.Ct. at 2151 (citation omitted). Similarly, in Toyota Motor Mfg. v. Williams, 534 U.S. 184, 200, 122 S.Ct. 681, 693 (2002), the Court noted that "[b]ecause of the conceptual difficulties inherent in the argument that working could be a major life activity, we have been hesitant to hold as much ... ." Indeed, as the Court noted in Sutton, even the EEOC appears to have some doubt about including "working" as a major life activity; unlike any other example in the regulation, "working" is not to be considered except as a last resort, i.e., only "[i]f an individual is not substantially limited with respect to any other major life activity." 29 CFR

pt. 1630, App. § 1630.2(j)). Nevertheless, although, unlike in Sutton, the FDNY has questioned in the instant case whether "working" should constitute a major life activity, the Second Circuit has so analyzed it, and has counseled deference to those regulations. See Francis, 129 F.3d at 283 n.1. I will therefore assume *arguendo* that working is a major life activity.

The focus of the argument on that score is whether the position of firefighter with the FDNY is a single job, or whether the FDNY's perception of plaintiff's inability to be a firefighter would disqualify him from a broad range of jobs or a substantial class of jobs. Again, a "class of jobs" is the job from which a claimant was disqualified, as well as all other jobs utilizing similar training, knowledge, and skills within "the geographical area to which the [claimant] has reasonable access." 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(B). A "broad range of jobs in various classes," in contrast, is the job from which a claimant was disqualified, as well as all other jobs not utilizing similar training, knowledge, and skills within "the geographical area to which the [claimant] has reasonable access." 29 C.F.R. § 1630.2(j)(3)(ii)(A), (C). Despite the distinctions between these criteria, the case law frequently analyzes them together. See, e.g., Bartlett, 226 F.3d at 83.

For the FDNY, the argument is straightforward: every firefighter is a firefighter. They all must be qualified to do precisely the same tasks because they can be called upon to perform any firefighting task at any time. They are therefore interchangeable, requiring little or no further training to move from one task to another. A firefighter, upon completion of training, is assigned to either an engine company or a ladder company, and while the tasks are somewhat different, they engage in cross-training so that they can move from one to the other.

Plaintiff's response to this addresses the issue both in terms of "class of jobs" and "broad range of jobs in various classes." As to the "class of jobs," his argument is twofold. First, he

11

points to the U.S. Department of Labor's O*Net, which lists over 30 different titles that he considers to be within the field of firefighting, e.g., Municipal Firefighting and Prevention Supervisors, Fire Lieutenant, Fire Captain, Fire Safety Inspector, Fire Lookout, and Forest Ranger (although he does not contend that the FDNY offers any of these titles). From this, he argues that if the FDNY's misperception of his disability was shared, he would be disqualified from all of these jobs. Second, plaintiff argues that within the FDNY itself, there are multiple "jobs" performed by FDNY firefighters, only some of which might require squatting and duck walking. Plaintiff points out that not only do ladder companies and engine companies have different functions – the former is charged with rescue operations at a fire scene while the latter is charged with water delivery – but there are different positions within each company, e.g., Officer, Forcible Entry position, and Extinguisher position. Finally, as to his argument that the FDNY's perception would disqualify him from a "broad range of jobs in various classes," plaintiff points to the prevalence of stooping and squatting in the workplace generally.

The problem with plaintiff's reliance on the O*Net is that he has given me no vocational or other evidence that even suggests that the FDNY's alleged misperception of him would disqualify him from any, let alone most, of these jobs; he has not even provided enough evidence to raise a factual issue that he might be disqualified. I have no way of knowing, for example, that he is not fully qualified to be a Forest Ranger even if whoever employs Forest Rangers (and plaintiff does not say who that is) shared the FDNY's alleged misperception.

Numerous ADA cases have failed for a similar failure to raise a factual issue. In Giordano v. City of New York, 274 F.3d 740 (2d Cir. 2001), for example, the plaintiff police officer was discharged when the NYPD found him disabled as a result of taking anti-coagulant medication. The NYPD's concern was that in a physical confrontation, the medication could

cause the plaintiff to bleed to death even from minor injuries. The plaintiff sued under the ADA, contending that this was a misperception, which if shared by other employers, would disqualify him from a broad range of jobs in the security industry. The Second Circuit found that plaintiff had failed to submit any evidence that plaintiff would be disqualified from other jobs in the field using similar skills, and affirmed summary judgment:

> Giordano stated in an affidavit that the very "duties of police officer which defendants claim [he] cannot perform are the kinds of duties which [he] would have to perform ... as a private investigator and/or in security which are really the only related fields for which [he is] qualified." The district court correctly noted, however, that Giordano adduced no evidence of the qualifications for these jobs. His assumption that his disqualification from the specific duties of an NYPD police officer will preclude him from working in related fields – or that the defendants perceived him as such – is, as the district court noted, "[s]peculation and conjecture," which will not suffice "to defeat a motion for summary judgment."

Id. at 749 (citations omitted); see also Shipley v. City of University City, 195 F.3d 1020 (8th Cir. 1999) (denial of reinstatement of firefighter due to perceived disability failed where firefighter failed pulmonary function test required of all firefighters, as the only job from which he was disqualified was the single job of firefighter); Colwell v. Suffolk County Police Dep't., 158 F.3d 635 (2d Cir. 1998) (reversing jury verdict and ruling for the defendant as a matter of law because evidence showed that the disability disqualified former police officers "'from only a narrow range of jobs' (those involving physical confrontation) and thus his impairment is not 'a substantially limiting one'"; "[w]ithout *specific* evidence about 'the kinds of jobs from which [an] impaired individual is disqualified,' the jury could not perform the careful analysis that is necessary ...," (quoting Heilweil v. Mt. Sinai Hospital, 32 F.3d 718, 723 (2d Cir. 1994) (emphasis added)); Welsh v. City of Tulsa, 977 F.2d 1415 (10th Cir. 1992) (firefighter applicant's argument that misperception of his disability by local fire department would disqualify him from other fire departments in the state because local fire department applied

state-wide standards, unsupported by vocational or other evidence, was too speculative to survive summary judgment); Tubens v. Police Dept. of the City of New York, 48 F. Supp. 2d 412, 418-19 (S.D.N.Y. 1999) (plaintiff failed to show that her perceived inability to undertake isometric exercise would disqualify her from either a class of jobs or a broad range of jobs in various classes).[3] Compare EEOC v. Joslyn Mfr. Co., No. 95 C 4956, 1996 WL 400037 (N.D. Ill. 1996) (expert evidence showed that plaintiff's perceived disability disqualified him from a class of jobs).

Like the present case, Bridges v. Foster, 92 F.3d 329, 333-34 (5th Cir. 1996), involved an EMT who wanted to be a firefighter. The plaintiff had a mild form of hemophilia, and was therefore not hired because of the risk of severe trauma associated with being a firefighter. The plaintiff contended that this perceived risk was a myth by which mild hemophiliacs were often victimized, pointing out that he had played contact sports in high school, and served in the National Guard. He argued that propagation of this myth would disqualify him from a broad range of jobs and substantial classes of jobs, including law enforcement, military service, factory work, and various other positions related and not related to firefighting that might result in exposure to trauma. The Fifth Circuit sustained the dismissal of the claim because the plaintiff had failed to produce any evidence of the qualifications for these jobs or that the fire department's alleged misperception would be shared by employers in those industries, and thus plaintiff had failed to raise an issue as to disqualification from a broad range of jobs. The Court also found that firefighter was single job, not a class of job:

> [P]rohibition from employment in one's chosen field does not *per se* establish a substantial limitation on working. ... [W]e hold that firefighting jobs – including

---

[3] Many of the cases, like Tubens, examine both the classes of jobs and broad range of jobs in various classes together.

14

firefighters and associated municipal paramedics or EMTs who must also serve as backup firefighters – is too narrow a field to describe a class of jobs... .

Id. at 335-36.

Bridges is particularly instructive because it relates to plaintiff's claim here that firefighting within the FDNY actually consists of multiple classes of jobs, not a single job. Although the plaintiff in Bridges was working as an EMT, he was working for a private company, not the local fire department to which he had applied. Unlike the FDNY, the fire department in Bridges required all of its EMTs and paramedics to be fully qualified to serve as back-up firefighters. It was that requirement that led the Fifth Circuit to conclude that firefighting for that particular fire department was a single job, not a class of jobs.

For the same reason, plaintiff's attempt in the instant case to break the job of firefighting for the FDNY into multiple jobs, and thereby create a class of jobs, fails. Although the FDNY has both engine companies, and ladder companies, and various assignments within those companies, the record is undisputed that every firefighter has to be able to do every assignment for either kind of company. There is no showing of separate promotional tracks, or compensation, or testing to support any of the distinctions that plaintiff is trying to make.

Thus, it is clear that when plaintiff attempts to create divergence between, for example, the "extinguisher" position on a ladder company and the "control" position on an engine company, he is not identifying different "jobs" within a "class," but, rather, different duty assignments. A duty assignment is not a job if all employees must be able to undertake it at any time; rather, the job is the combination of all of the possible duty assignments. The most plaintiff can say in an attempt to create this distinction is that in some instances, a particular company might give preference for duty assignments based on seniority, and some firefighters might prefer one duty assignment over another. However, that does not create a class of jobs. A

15

federal district judge might prefer trial over arraignment duty, especially over the holidays, and the more senior the judge, the more likely that the holiday arraignment duty assignment can be avoided, but every judge has to be able to do both and all other assignments required for the position. The firefighter position, as utilized by the FDNY, is similarly a single job.

Finally, plaintiff's contention that he has been disqualified from a broad class of jobs because his perceived inability to squat is something required throughout many types of jobs is unsupported by any evidence he has placed before me. The most he has shown is that stooping and squatting are common in the workplace, see fn. 2, supra; however, he has not referred to a single specific position from which the FDNY's alleged misperception would disqualify him.

There is no question about the sincerity of plaintiff's long-held desire to be a firefighter. However, as implemented by the FDNY, it is just one job, with one employer. Plaintiff remains able to work both for the FDNY in another capacity and, and on this record, there is no other job from which the FDNY's perception of his disability would disqualify him. Under these circumstances, the ADA does not provide a remedy.

### B. "Otherwise Qualified"

Because I have concluded that plaintiff's claim fails under the "disability" requirement, I need not address the parties' arguments regarding the "otherwise qualified" requirement of the ADA. However, I note that both parties have succumbed to the confusion in the case law which treats this requirement as merely requiring the resolution of whether plaintiff's physical condition is severe enough to preclude him from doing the job. See Shannon v. New York City Transit Authority, 332 F.3d 95, 99-100 (2d Cir. 2003) ("Although the phrase 'otherwise qualified' is hardly unambiguous on its face, its meaning in the context of an employment discrimination claim is fairly clear: an individual is otherwise qualified for a job if she is able to

perform the essential functions of that job, either with or without a reasonable accommodation." (citations omitted)). The argument thus quickly devolves into whether the FDNY acted reasonably in determining that he could not; the FDNY refers to the "great deference" due to the employer's determination of that issue. Plaintiff contends that the FDNY did not act reasonably because squatting and duck walking are not essential to the job and thus he is qualified. The problem with both parties' positions, and the case law that uses the same framework, is that they are skipping over the initial inquiry of the "otherwise qualified" analysis.

A prima facie case is based on plaintiff's evidence, not defendant's response to it. See Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994). At the prima facie case stage of the inquiry, the issue is not simply whether plaintiff is qualified, with or without a reasonable accommodation. That is the ultimate question in the case. Rather, the question is whether he is "*otherwise* qualified." See 29 C.F.R. § 1630.2(m) (setting forth the two-part test for determining whether a person is otherwise "qualified" including whether he possesses "the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and [whether he], with or without reasonable accommodation, can perform the essential functions of such position."). This test requires us to put aside the contentious issue of plaintiff's perceived disability, and first determine whether there is any other reason, aside from the dispute at issue, why plaintiff would not have received the job. This initial inquiry prevents the parties and the Court from engaging in a futile gesture. If, for example, plaintiff had recently been convicted of arson, we would not need to bother with examining disability discrimination, because plaintiff would not be otherwise qualified to be a firefighter in any event.

As so construed, there is no issue in the instant case as to whether plaintiff is "otherwise qualified." Plaintiff's test scores were high, he had no criminal record, and there was no other reason why plaintiff was not qualified to be a firefighter other than his perceived disability. Therefore, plaintiff was "otherwise qualified," and has satisfied that prong of the prima facie case. Nevertheless, because he was not disabled as that term is used under the ADA, he cannot establish a prima facie case of disability discrimination.

## CONCLUSION

Defendant's motion for summary judgment is granted. The Clerk is directed to enter judgment.

**SO ORDERED.**

s/ Hon. Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
December 23, 2008